UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**ANTHONY KELLY**                                      **CIVIL ACTION**

**VERSUS**                                             **NO. 05-0328**

**BURL CAIN, WARDEN**                                  **SECTION "J" (6)**

### REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.

Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2). Accordingly, it is recommended that the petition be **DENIED WITH PREJUDICE.**

### I. PROCEDURAL HISTORY

Petitioner, Anthony Kelly, is a state prisoner who is presently incarcerated in the Louisiana State Penitentiary, Angola, Louisiana. On August 17th, 2000, Kelly was found

guilty by a jury of possession of marijuana with intent to distribute, a violation of LSA-R.S. 40:966(A).[1] Kelly was sentenced to a term of fifteen years, with credit for time served, on September 1, 2000.[2] The State filed a multiple offender bill of information and, after a hearing was held on November 17, 2000, Kelly was adjudicated a third felony offender.[3] His prior sentence was vacated and he was re-sentenced as a multiple offender to a term of life, without benefit of parole, probation or suspension of sentence.[4] The trial court subsequently denied Kelly's motion for reconsideration of sentence on December 6, 2000.[5]

      Kelly directly appealed his conviction and sentence, timely filing a brief with the Louisiana Court of Appeal, Fifth Circuit on or about March 22, 2001, under Docket Number 01-KA-0321. Kelly's conviction and sentence were affirmed on October 17, 2001.[6] He did not seek a rehearing from that court. Instead he filed a pleading entitled "Application

---

[1] *See* Minute Entry dated August 17, 2000 and Jury Verdict Form, Case #99-5974 "F", 24th Judicial District Court, Parish of Jefferson, Louisiana. State Rec. Vol. 1 of 5.

[2] *See* Minute Entry dated September 1, 2000, State Rec. Vol. 1 of 5.

[3] *See* Minute Entry dated November 17, 2000, State Rec. Vol. 1 of 5; *see also* Transcript of multiple offender hearing, pp. 31-33, State Rec. Vol. 2 of 5.

[4] *See* Transcript of multiple offender hearing, pp. 31-33, State Rec. Vol. 2 of 5.

[5] A copy of this decision may be found in State Rec. Vol. 1 of 5.

[6] A copy of the Louisiana Fifth Circuit's decision affirming Kelly's conviction can be found in State Rec. Vol. 4 of 5. *See also State v. Kelly*, 800 So.2d 978 (La. App. 5th Cir. 2001).

for Writ of Certiorari", docketed as 2001-KO-3266, with the Louisiana Supreme Court.[7] On November 1, 2002, the Louisiana Supreme Court denied petitioner's writ application.[8]

On or about September 30, 2003, Kelly signed and dated a post-conviction application which he filed with the state district court on October 7, 2003. Kelly's post-conviction application was denied by the district court on October 21, 2003.[9] His request for review of this decision by the state appellate court was denied on December 5, 2003.[10] A subsequent request for review to the Louisiana Supreme Court was denied on January 7, 2005.[11]

On or about February 1, 2005, Kelly tendered the instant federal habeas to his custodian for filing in this court. Therein, Kelly raises the following claims for relief: insufficient evidence to sustain his conviction of the crime of possession of marijuana with

---

[7]In that pleading, Kelly raised the issues of insufficient evidence to sustain his conviction and insufficient evidence to establish that he was a third felony offender.

[8]The decision of the Louisiana Supreme Court, captioned *State v. Anthony Kelly*, 2001-KO-3266, and listed as an application for "Writ of Certiorari and/or Review", can be found in State Rec. Vol. 4 of 5; *see also State v. Anthony Kelly*, 828 So.2d 565 (La. 2002). The Louisiana Supreme Court ruled on the case by simply stating, "DENIED".

[9]*See* application and district court decision on post-conviction relief in State Rec. Vol. 5 of 5.

[10]*See* State Rec. Vol. 5 of 5 for both a copy of the application, docketed as 03-KH-1401, and for a copy of the decision of the Louisiana Court of Appeal, Fifth Circuit. The Fifth Circuit ruled that there was no error in the trial court's October 21, 2003 decision to deny post-conviction relief.

[11]A copy of this decision can be found in State Rec. Vol. 5 of 5; See also, *State ex rel. Kelly v. State*, 891 So.2d 676 (La. 2005).

intent to distribute; and, insufficient evidence to establish that he is a third felony offender. Kelly's federal habeas petition has been deemed to be timely (*see* Fed. Rec. Docs. 6 and 7), and the State, in its Response (Fed. Rec. Doc. 9), concedes that petitioner has exhausted his state court remedies as required under *Rose v. Lundy*, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982). Accordingly, this court shall proceed to review the pertinent facts, then address the merits of petitioner's claims.

## II. FACTS[12]

On June 23, 1999, a confidential informant made a controlled drug buy from Co-Defendant, Gwendolyn Minor, at 2713 Dawson Street during which the informant purchased $20.00 worth of marijuana.[13] The controlled buy was arranged after the confidential informant advised Detective Janell Godfrey with the Kenner Police Department that marijuana was being distributed from the address by a black female named "Gwen."

The day after the controlled drug buy, Detective Godfrey obtained a search warrant for 2713 Dawson Street. The search warrant was executed on July 1, 1999, at approximately 7:00 p.m. after the confidential informant advised Detective Godfrey that

---

[12]The facts are taken from the state appellate court's opinion on direct appeal, *State v. Kelly*, 800 So.2d 978 (La. App. 5 Cir. 2001).

[13]Co-defendant Gwendolyn Minor was charged in the same bill of information as defendant with possession of marijuana with intent to distribute. She pled guilty as charged prior to trial.

the residence had just received a large amount of marijuana. In executing the search warrant, the police used a ram and made a forced entry into the residence where they found Defendant, two of Defendant's brothers (James and Keithen), Co-Defendant, and Co-Defendant's juvenile son (E.M.) and young daughter.

  Defendant and E.M. were found in the upstairs bathroom, where E.M. had his hands in the toilet and Defendant was frantically trying to flush the toilet. A clear plastic bag containing 21 smaller bags of marijuana was retrieved from the toilet. Additionally, three partially smoked hand-rolled marijuana cigarettes were observed in plain view in the ashtray on the living room table and a marijuana odor was detected in the home. A search of Co-Defendant's purse revealed another clear plastic bag with 21 smaller bags of marijuana, a bag of loose marijuana and EZ Wilder rolling paper which is used to package marijuana. "Dime bags", which are also used to package marijuana, were found in the bedroom of the residence.

  Defendant claimed he did not live in the residence and did not know Co-Defendant was selling marijuana. However, a letter with a postage date of June 25, 1999, was found in the bedroom addressed to Defendant at that address. The defense offered a tax refund document addressed to Defendant that showed a different address of 2718 Dawson. The document was dated March 26, 1999, and was for the 1998 tax period. Detective Godfrey testified that there were men's clothes and shoes in the bedroom closet

of 2713 Dawson Street.  She testified that the clothes and shoes were for a large size man.  Defendant was described as being 6 feet tall and weighing 250 lbs.  Also, in the bedroom there was a picture of Defendant and Co-Defendant together that said "Gwen, Lil Bit forever love."

Defendant and Co-Defendant were arrested and charged with possession of marijuana with intent to distribute.  Defendant's two brothers, James and Keithen, and Co-Defendant's son, E.M., were arrested and charged with simple possession of marijuana.

### III.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a comprehensive overhaul of federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law where there has been an adjudication on the merits in State court proceedings.

State court determinations of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference unless they were "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States."  *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  The United States Supreme Court has advised that:

> Under the "contrary to" clause, a federal habeas corpus court may

>   grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 1056, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); *Hill*, 210 F.3d at 485. Questions of fact found by the state court are "presumed to be correct ... and we will give deference to the state court's decision unless it `was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hill*, 210 F.3d at 485, *quoting* 28 U.S.C.§ 2254(d)(2).

## IV.  ANALYSIS

### Claim 1):  Insufficient Evidence to Sustain Conviction

Petitioner claims that the evidence introduced at trial was insufficient to support his conviction for possession of marijuana with intent to distribute. More specifically, petitioner claims that the State failed to prove that he had the specific intent to distribute marijuana. Plaintiff states that police testimony to the effect that he, along with the minor, E.M., was discovered trying to flush marijuana down the toilet does not prove that he "ever intended to distribute that marijuana." (Fed. Rec. Doc. 3, p. 9). Instead, "the more obvious inference" to be drawn is that he was "attempting to destroy the marijuana in order to protect Ms. Minor...." (Fed. Rec. Doc. 3, p. 9). Petitioner

further notes that Gwen Minor testified that her marijuana distribution was a "solo operation", and the confidential informant's tip reflected that marijuana had been purchased from a female named "Gwen", petitioner's name was not mentioned. (Fed. Rec. Doc. 3, p. 9). Finally, petitioner asserts that the only evidence linking him to the residence where the marijuana was discovered was circumstantial, namely, the picture of petitioner and Gwen Minor, the men's clothing, and a letter addressed to him at that residence. (Fed. Rec. Doc. 3, p. 10). The circumstantiality of this evidence, coupled with "the testimony by Ms. Minor that she alone planned to distribute the marijuana, makes this conviction [according to petitioner] unsustainable on the proof offered." (Fed. Rec. Doc. 3, p. 10).

In addressing the instant claim in connection with petitioner's direct appeal, the Louisiana Fifth Circuit first examined applicable federal law.

> The standard for testing the sufficiency of the evidence requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

*Kelly*, 800 So.2d at 982.

The state appellate court next reviewed the elements of the crime of possession of marijuana with the intent to distribute and discussed the type of evidence which is and is not sufficient to prove these elements.

The crime of possession with intent to distribute marijuana requires proof that the defendant knowingly and intentionally possessed the drug and that he did so with the specific intent to distribute it. LSA-R.S. 40:966(A); *State v. Taylor,* 99-1154 (La.App. 5 Cir. 2/29/00), 757 So.2d 63, 71, writ denied, 00-1021 (La.3/30/01), 2001 La. LEXIS 1071, 788 So.2d 441. The first element, "possession," includes both "actual" and "constructive" possession. *State v. Quest,* 00-205 (La.App. 5 Cir. 10/18/00), 772 So.2d 772, 786. A person not in physical possession of narcotics may have constructive possession when the drugs are under that person's dominion or control. *Id.* Factors considered in determining whether the defendant exercised dominion and control sufficient to constitute constructive possession include: 1) the defendant's knowledge that illegal drugs were in the area; 2) his relations with the person found to be in actual possession; 3) the defendant's access to the area where the drugs were found; 4) evidence of recent drug use by the defendant; 5) the existence of paraphernalia; and, 6) evidence that the area was frequented by drug users. *Id.*

The mere presence of the defendant in the area where a controlled dangerous substance is found, or mere association with a person in possession of the substance is insufficient to constitute constructive possession. Additionally, being a resident of the premises where drugs are found is not in and of itself sufficient to prove constructive possession. *State v. Hodge,* 00-0515 (La.App. 4 Cir. 1/17/01), 781 So.2d 575, 580. Nevertheless, a person found in the area of the contraband can be considered in constructive possession if it is subject to his dominion and control. The defendant can have constructive possession if he jointly possesses drugs with a companion and if he willfully and knowingly shares with his companion the right to control the drugs. *Id.* Proximity to the drug, or association with the possessor, may establish a prima facie case of possession when colored by other evidence. *State v. Williams,* 98-1006 (La.App. 5 Cir. 3/30/99), 735 So.2d 62, 69, writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118.

Defendant does not challenge the finding that he was in possession of marijuana. Rather, he challenges the determination that he had specific intent to distribute marijuana. Specific intent is defined as that state of mind which exists when the circumstances indicate the offender actively desired the prescribed criminal consequences as reasonably certain to result from his act or failure to act. LSA-R.S. 14:10. The intent to distribute may be established by proving circumstances surrounding the defendant's possession which give rise to reasonable inferences of intent to distribute.

> *State v. Quest,* 772 So.2d at 786. Factors which may give rise to a
> reasonable inference that defendant had the specific intent to distribute
> include 1) previous attempts to distribute, 2) whether the drug was in a form
> consistent with distribution to others, 3) the amount of the drug, 4) expert or
> other testimony showing the amount found in the defendant's possession to
> be inconsistent with personal use only, and 5) paraphernalia evidencing an
> intent to distribute. *Id.*

*Kelly*, 800 So.2d at 982-983.

Thereafter, the Louisiana Fifth Circuit examined the evidence submitted in the instant matter, ultimately concluding that it was sufficient to support petitioner's conviction.

> In the present case, the marijuana defendant was trying to flush down
> the toilet was packaged in 21 small colored plastic bags.  These bags were
> identified as "dime" bags, meaning they sold on the street for $10.00 each.
> The total weight of the marijuana in the clear plastic bag found in the toilet
> was 31.7 grams. Sergeant Bruce Harrison, an expert in the use, packaging,
> distribution and value of street level narcotics, testified that a smaller
> amount of the drug-only two to three individual packages-would have been
> indicative of personal consumption.  He explained that to purchase the 32
> grams of marijuana the way it was individually packaged in Exhibit S-6[14]
> would cost approximately $200-$210, whereas a person could buy 28 grams
> of marijuana in bulk for $80-$100.  Thus, he concluded it would not be
> economical or practical to purchase that amount of marijuana, individually
> packaged, for personal consumption.
> Drug paraphernalia, specifically "nickel" and "dime" bags used for
> packaging, was found in the bedroom.  Loose marijuana was also found in
> the home.  Sgt. Harrison testified that while loose marijuana alone could be
> consistent with personal consumption, the presence of individual packages
> ready for sale indicates that packaging for retail distribution has been
> interrupted, leaving some loose amount of the substance.

---

[14]Exhibit S-6 was the bag found in the upstairs toilet.

Co-Defendant testified that Defendant did not know she sold marijuana. She claimed all of the marijuana was hers and that she packaged the marijuana by herself with no help from Defendant. She testified that she kept some of the marijuana under the bathroom sink but no one knew about it. Sgt. Harrison testified that the bathroom is the most common place for people to destroy drugs when the police arrive. He explained that most suspects have a plan in place of what to do with the drugs when the police enter the house. Sgt. Harrison stated that if a person is flushing the marijuana, that person knew the marijuana was there and knew what they were going to do in the event the police actually entered the house.

The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. *State v. Hotoph,* 99-243 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, 1045, writs denied, 99-3477 (La.6/30/00), 765 So.2d 1062, and 00-0150 (La.6/30/00), 765 So.2d 1066. It is not the function of an appellate court to assess credibility or reweigh the evidence. *Id.* Clearly, the jury did not believe Co-Defendant's testimony that Defendant had no knowledge that she sold marijuana and that he did not help her sell it.

In *State v. Taylor,* 99-1154 (La.App. 5 Cir. 2/29/00), 757 So.2d 63, 72, writ denied, 00-1021 (La.3/30/01), 2001 La. LEXIS 1071, 788 So.2d 441, this Court found there was insufficient evidence to convict defendant of possession with intent to distribute marijuana. In *Taylor,* 74 grams of loose marijuana was found under defendant's bed and nine grams were found in hollowed-out cigars. While plastic bags commonly used to package marijuana were found in the home, no marijuana was divided into nickel or dime bags. In determining the evidence was insufficient to show defendant's intent to distribute, this Court focused on the lack of testimony as to whether the amount of marijuana was consistent with personal use. Conversely, in the present case, there was expert testimony that the amount of the marijuana combined with the way it was packaged was indicative of retail sale as opposed to personal consumption.

Admittedly, there was no evidence that Defendant had sold drugs in the past.[15] However, there was evidence marijuana had been sold out of the

---

[15] Although defendant had a prior conviction for possession with intent to distribute cocaine as demonstrated at the multiple bill hearing, this evidence was not presented at trial.

11

>   residence.  The evidence clearly shows Defendant had knowledge that marijuana was in the house and that he exercised enough control over the marijuana to locate it and try to destroy it when the police arrived.  The existence of drug paraphernalia, the individual packaging of the marijuana Defendant was trying to destroy, and the fact the amount of the marijuana was inconsistent with personal consumption support a reasonable inference that Defendant had specific intent to distribute the marijuana. Therefore, it appears the evidence is sufficient to support defendant's conviction.

*Kelly*, 800 So.2d at 983-984 (footnotes original).

This court finds that the above reasoning does not represent an unreasonable application of the law enunciated by the Supreme Court in *Jackson*, *supra*, to the applicable facts.  Accordingly, petitioner's claim for habeas corpus relief is without merit.

### Claim 2)  Insufficient Evidence to Adjudicate Petitioner to be a Third Felony Offender

Petitioner argues that the trial court erred in adjudicating him to be a multiple offender because there was insufficient evidence of the prior guilty plea convictions.  Specifically, petitioner contends that his two prior convictions could not properly be used for enhancement purposes because there was no showing as to his valid waiver of rights.  Because no *Boykin* transcripts were introduced into evidence at his multiple bill hearing, petitioner asserts that there is no way to discern whether his prior guilty pleas were knowingly and intelligently made.  As shown below, petitioner's argument, for the purpose of attaining federal habeas corpus relief, is without merit.

The Supreme Court has made clear that generally, "federal postconviction relief is [not] available when a prisoner challenges a current sentence on the ground that it was enhanced based on an allegedly unconstitutional prior conviction for which the petitioner is no longer in custody." *Lackawanna County District Attorney v. Coss*, 532 U.S. 394, 121 S.Ct. 1567, 1570, 149 L.Ed.2d 608 (2001). The Court held:

> [O]nce a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid.... If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.

*Id*. at 1574.[16]

As set forth above, petitioner cannot challenge the constitutionality of his prior convictions for purposes of attacking the enhanced sentence he is presently serving. Accordingly, the instant claim for habeas relief is without merit.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the application for federal habeas

---

[16] There are two exceptions to the above general rule. One exception is with respect to habeas petitions challenging an enhanced sentence "on the basis that the prior conviction used to enhance the sentence was obtained where there was a failure to appoint counsel in violation of the Sixth Amendment...." *Id*. The second exception might lie, albeit in a rare circumstance, where through no fault of his own, there was no channel of review actually available to petitioner through which he might have timely challenged his prior conviction. *Id*. at 1575. Neither of these exceptions are applicable in the instant situation.

corpus relief filed on behalf of petitioner, Anthony Kelly, be **DENIED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this __3rd__ day of _____March_____, 2008.


_____
LOUIS MOORE, JR.
United States Magistrate Judge